UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | INDICTMENT NO.: 4:21-CR-00031 |
| ) | |
| NIHAD AL JABERI, ) | |
| ) | |
| Defendant.   ) | |

**SENTENCING MEMORANDUM OF MR. NIHAD AL JABERI**

Mr. Nihad Al Jaberi, the defendant in the above-styled case, will soon stand before the Court at sentencing. He now respectfully submits this Sentencing Memorandum to assist the Court in its task of imposing a sentence that is "sufficient but not greater than necessary." *See* 18 U.S.C. § 3553 (2022).

**I.   Personal History and Characteristics of Mr. Al Jaberi.**

Mr. Al Jaberi submits that the trial of this case did not even begin to paint an accurate picture of him and his life. He is not a dangerous terrorist or a smuggler intending to harm anyone.[1]

Rather, pushing past the caricature of him at trial, Mr. Al Jaberi is a devoted husband and father and a legal immigrant who came to this country after living in a worn-torn country and being threatened by the local militias in Iraq.[2]

As to the loving relationship between Mr. Al Jaberi and his wife of 15 years, Rasha, she writes to the Court that "I urge you to please see him as I see him, a loving

---

[1]   Indeed, as the defense pointed out at trial, the government did not link Mr. Al Jaberi to anyone or any organization in Iraq, did not put forward any evidence of payment for shipping firearms, or any evidence of communication about the firearms with anyone in Iraq.
[2]   *See* Final Presentence Investigation Report ("PSI"), ¶ 63.

husband and father.  A man whose wife and kids need him."[3]  In the same tone, Mr. Al Jaberi's three young children, Fahad, Shaheed, and Mustafa, have submitted a deeply moving letter the Court:[4]

> Fahad's letter: Dear Judge/ your honor my name is Fahad Al Jaberi I'm in 7th grade and I'm a 12 year old boy that has lived through many issues and many more and I am making this letter because of 1 thing needing my Father and I NEED him because we lost a big house because when my dad left or when they took him we lost a big house and we had to get out because we could not pay rent and now we rent a smaller one and it has no upstairs so we had to throw away many items that we wanted like my desk for online school so I won't have to sleep on the ground all day for school and my father is the most important thing to me. If he is not there, then nothing is there. It just feels like a dark whole and my heart is clouded with what wrong could happen and if I get my dad back, I might not be depressed anymore because my dad is my light, he is my rest he is my heart. Thank you

The other letters submitted in support of Mr. Al Jaberi describe him as "a good and generous person,"[5] a "kind, lovable, humanitarian, cooperative and kind-hearted person,"[6] and as "a good and generous person who helps people and loves life."[7]  Indeed, these are the true characteristics of Mr. Al Jaberi.

Not surprisingly, then, these characteristics are most reflective of the life that Mr. Al Jaberi lived prior to his arrest in this case.  As described by his brother, Mr. Al Jaberi "was committed to the values of life and sanctifies work and all his relatives and friends love him and he has no hostile behavior or criminal or judicial history in his country of Iraq and lives in a balanced manner …"[8]  And since Mr. Al Jaberi arrived in the United States, he has no arrest history or criminal history.[9]  He has

---

[3]   Various letters of support submitted in support of Mr. Al Jaberi, including the letter from his wife Rasha, are attached hereto as Exhibit 1.
[4]   *See* Exhibit 1.
[5]   *See* Exhibit 1, Letter from Lubna Al Badr.
[6]   *See* Exhibit 1, Letter from Batoul Al Jabri.
[7]   *See* Exhibit 1, Letter from Ammar Al Jabri.
[8]   *See id.*
[9]   PSI, ¶ 55-60.

never used or abused illegal drugs or alcohol.[10] Mr. Al Jaberi has lived life contrary to the stereotypical smuggler, a life which shows he had too much to give up to intentionally seek to hurt anyone.

To come to the United States, Mr. Al Jaberi "went to the U.S. Embassy in Iraq to save his family after receiving threats from the militia."[11] Thereafter, Mr. Al Jaberi "obtained legal permanent resident status in the United States on August 18, 2016."[12] As noted by Mr. Al Jaberi's wife, Rasha, "[m]oving across the ocean to a foreign land, with a foreign language and culture took a big toll on our family. We wanted a peaceful and dignified life. We wanted to give our children a safe home and we wanted them to grow up with luxuries we unfortunately never had back home."[13]

Despite the image portrayed at trial, Mr. Al Jaberi is known by others as a kind, loving, and helpful husband and father who has never engaged in criminal conduct. Mr. Al Jaberi pleads with the Court to consider the descriptions of those that know him best as it imposes a sentence in this case.

## II. Mr. Al Jaberi's Enumerations of Error Should be Considered in Imposing the Sentence.

As detailed in the PSI, Mr. Al Jaberi did not enter into a plea agreement and chose to proceed to trial. Mr. Al Jaberi now submits that the Court should consider the following points from trial in forming and imposing a sentence:[14]

---

[10] PSI, ¶ 69.
[11] PSI, ¶ 63.
[12] *Id.*
[13] *See* Exhibit 1, Letter from Rasha Al-Rubaye.
[14] These are appropriate considerations for sentencing under 18 U.S.C. § 3661 (2022) (stating that "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence").

- At trial, a government witness changed the caliber of one of the firearms from a .44 caliber firearm to a .50 caliber firearm. Mr. Al Jaberi believes this misstatement unduly prejudiced him before the jury because a .50 caliber firearm sounds more militaristic than a .44 caliber firearm and made him more guilty in the jury's mind. As shown at trial, through the government's own exhibits, the firearms in the case were purchased at easily accessible public sporting-goods stores and were not military-style firearms. Even so, Mr. Al Jaberi submits that the government scared the jury by brining in the firearms and presenting them before them as "tactical weapons."

- At trial, Mr. Al Jaberi submits that the recordings produced and introduced before the jury were not complete or accurate and that the recordings had been edited to make him look guilty.

- Mr. Al Jaberi submits that there were too many inconsistencies and contradictory evidence in the government case for him to have been convicted, including, but not limited to:

  - The location of the stove box containing the disassembled firearms was contradicted by the government witness: the first witness that was present during the unloading of the container testified that the box was all the way in the back of the container and a later government witness testified that the box was in the middle of the container in front of several cars;

  - That the witness from North Atlantic Logistics presented at trial was not the individual that Mr. Al Jaberi dealt with, and, in any event, that witness testified that it was not Mr. Al Jaberi that North Atlantic Logistics relied upon in making and submitting the relevant documents;

  - That the timeline of the shipping container leaving the loading company and arriving at the port of Savannah does not support the government's theory of the case and shows that the shipping company had the information prior to the bill of lading being e-mailed by Mr. Al Jaberi to North Atlantic Logistics;

  - That the prosecutor referenced other individuals, including Mahmood Al Tayyar and Ashraf Taha, as refugees, when those individuals had obtained citizenship or were working to gain citizenship and another, Eugene McNair, was an American citizen;

- o That the government witness could not and did not properly explain the images of the Bill of Lading found on Mr. Al Jaberi's cellular phone and presented as Government's Ex. 27-033 and when cross examined, the government witnesses could only testify "I don't know."

- Mr. Al Jaberi submits that the jury should not have convicted him because the government's investigation focused and stopped with Mr. Al Jaberi and the government did not investigate the loading company and did not bring the loading company to the trial even though the government had documents, such as the bill of lading and the dock receipt, which showed the loading company's involvement and responsibility for loading the container and for making the reports and paperwork to be forwarded to the shipping company. There are recorded calls on the jail phone line between Mr. Al Jaberi and the owner of the loading company, but Mr. Al Jaberi did not want to introduce them at trial because he "did not want to hurt anyone."

Mr. Al Jaberi submits that these points should be considered in imposing a sentence that is just and sufficient, but not greater than necessary in this case.

### III. <u>Conclusion</u>.

For the reasons detailed above, Mr. Nihad Al Jaberi respectfully requests that the Court follow its duty to impose a sentence that is "sufficient but not greater than necessary." *See* 18 U.S.C. § 3553 (2022).

Respectfully submitted, this 8th day of July, 2022.

CROWDER STEWART LLP

*/s/ C. Troy Clark*

C. Troy Clark
Georgia State Bar No.: 811674
CROWDER STEWART LLP
540 Ninth Street
Post Office Box 160
Augusta, Georgia 30903
(706) 434-8641
tclark@crowderstewart.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing SENTENCING MEMORANDUM on all the parties in this case in accordance with the notice of electronic filing (CM/ECF) which was generated as a result of electronically filing this document with the Court.

This 8th day of July, 2022.

CROWDER STEWART LLP

*/s/ C. Troy Clark*

C. Troy Clark
Georgia State Bar No.: 811674
CROWDER STEWART LLP
540 Ninth Street
Post Office Box 160
Augusta, Georgia 30903
(706) 434-8641
tclark@crowderstewart.com
